In the Matter of Thomas Bye, an Alien.

---

## In the Matter of Thomas Bye, an Alien.

A native of Holland came to this country, and after remaining here nine years, returned to Holland, was married there, and for six years followed there the occupation of a mariner. He then returned to the United States, and for fifteen years was employed as a mariner continuously in American vessels, and for the last five years sailed exclusively in a vessel belonging to the port of New York, his wife during all the time being in Holland, where she was supported by the applicant who had frequently solicited her to come to this country with her children to live, but who preferred to remain there from a natural dread of venturing upon the ocean.

*Held*, that the applicant had resided five years in the United States, and one year in the State of New York, within the meaning of the naturalization law, and was entitled to be admitted a citizen.

A foreigner continously and exclusively employed in the vessel of a nation, may by length of time acquire a residence in that nation as effectually as though he had remained upon the land within its boundaries. Vessels are subject to the jurisdiction of the country to which they belong, and for certain purposes are regarded as part of its territory.

Every human being has a fixed domicil, which is the place where his parents lived at the time of his birth, and which continues until he acquires another, and the supposed exceptional cases of gypsies, vagrants, or wandering outcasts, who do not know where or when they were born, are not exceptions to the rule, for their place of birth, if known, is their domicil, and if not known, it is the place of which they have the earliest recollection, or beyond their recollection, where they were first known and seen by others.

Residence is usually the result of a man's voluntary acts, and whether he has acquired one, in the sense of domicil, depends less upon general rules than upon the circumstances of his individual case. It is more a question of fact than of law.

If it is usual with a mariner to ship in any vessel, indifferent as to the country to which she belongs, or as to the part of the world in which he may find himself

when his contract ends, it will be inferred that no intention existed to change his domicil, but to suffer that to continue which he acquired at his birth, or had when he first became a mariner; *otherwise*, when his acts clearly indicate an intention to make some particular place or country his residence, or when he confines himself in his calling for many years exclusively to the vessels of a particular nation, repeatedly declaring during that time his intention to continue in that country for the remainder of his life.

If a married man, his residence is the place or country where his wife or family dwell, but this is not conclusive in all cases. A man's wife cannot control his right to fix his permanent place of abode in any part of the world to which his interest or inclination may lead him. It is her duty to follow him, and abide in the place where it is most convenient for him to enjoy her society, and where he is willing to provide for her and his children.

SPECIAL TERM, *September*, 1869.

THIS was an application on the part of Bye to become a citizen of the United States. The facts appear in the opinion of the court.

DALY, F. J.—The applicant is a native of Holland, and is now forty-nine years of age. He came to this country thirty years ago as the steward of an American vessel, and remained residing here continuously for nine years. He then went to sea, and twenty years ago was married at Mastenbroek, in Holland, where his wife and two of her children have ever since resided. For five years thereafter he sailed in foreign vessels, chiefly from ports to and from Holland, occasionally visiting his family for short periods as his occupation would permit. About fifteen years ago he returned to the United States, and has ever since been employed as a mariner in the merchant marine of this country, sailing for the last six years exclusively in vessels belonging to the port of New York, during which time he has seen his wife and family but twice, upon leave of absence granted to him while employed on board American vessels that were temporarily at the ports of Rotterdam and Antwerp. He has had no rupture with his wife and family, but, on the contrary, has transmitted to them regularly an adequate portion of his wages for their support. He has repeatedly solicited his wife to come with her children to this country and live in the city of New York, which is now and has been practically his

In the Matter of Thomas Bye, an Alien.

home when upon shore for the last fifteen years, but she has pre-
ferred to remain at Mastenbroek, where she was born and mar-
ried, having, in addition, a natural repugnance to or fear of ven-
turing upon the sea.   His return to this country was induced by
the circumstance that he could do better here than in Holland,
and it is now and has long been his intention to continue here
for the remainder of his life, being very much attached to a
country where his industry has met with a greater reward, and
where his prospects for the future are better, than in the country
of his birth.   Three years ago his eldest child was sent here at
his request, voluntarily, by his wife, and is now supported by
him in this city.   In November, 1861, he declared his intention
in this court to become a citizen of the United States.   He was
then employed as the chief mate of a vessel belonging to this
port, in which he has continued ever since.   The owners of this
vessel wish and intend, if he becomes a citizen of the United
States, to appoint him to the responsible position of master.
They give him a high character for fidelity, integrity, industry,
and capacity.

We have repeatedly held, in this court, that a mariner of
foreign birth, who has been employed exclusively in American
vessels for five years continuously prior to his application to be
admitted a citizen, and who, for the last year of that term, has
shipped only in vessels belonging to the port of New York, is,
within the meaning of the naturalization laws, to be deemed a
resident, during that term, of the United States, and a resident
of this State for one year, unless there are circumstances which
show that he has maintained and kept up his previous residence
(*In the matter of Scott*, 1 Daly, 534; *In the matter of Hawley*,
Id. 531; Dunlap's Laws of the United States, pp. 307, 493, 494,
1167; Story's Conflict of Laws, secs. 42 to 48).

A foreigner, continuously and exclusively employed in the
vessels of a nation, may, by length of time, acquire a residence
in that nation as effectually as though he had remained upon
the land within its boundaries; for vessels are subject to the ju-
risdiction of the country to which they belong, and, for certain
purposes, are regarded as part of its territory; as in the case put
by Vattel of a child born in the vessel of a nation upon the

high seas, which, he says, may be reputed to be born in its territories (Vattel, B. 1, c. 19, sec. 216, and see Laurence's Wheaton, p. 209).

Every human being has a fixed domicil. Originally it is the place where his parents lived at the time of his birth, which continues until he has acquired another ; for although there are supposed exceptional cases (Vattel, B. 1, c. 19, sec. 219 ; Cochin, t. 1, p. 184; Felix Droit Int. Prive, t. 1, sec. 29, n. 2), as gypsies, vagrants, or those wandering vagabonds or outcasts who do not know where or when they were born, it is not so in fact; for the place of birth when known is the domicil (1 Bl. Com. 366, 369 ; Story's Conflict of Laws, sec. 48) ; or, if not known, then it is the place of which the individual has the earliest recollection, where he was first seen and known by others. Unless an individual is controlled by circumstances, his residence, using that term in the sense of domicil, is the result of his own voluntary acts, and the question whether he has or has not acquired one depends less upon the application of any general rules than upon a consideration of the circumstances of his individual case. It is, as Lord Loughborough said in *Bempde* v. *Johnstone* (3 Ves. 251), more a question of fact than of law. If he is a mariner, his calling is one that compels him, as ·a means of livelihood, to traverse the sea from one port or place to another, and, while the voyage continues for which he has shipped, his place of abode is the vessel to which he belongs, whether she is temporarily in port or pursuing her course over the ocean. In the short intervals that elapse, in following such a vocation, between the termination of one voyage to the beginning of another, his place of abode is necessarily upon the land, but he does not change his domicil or acquire a new one, unless his acts clearly indicate that he has done so by making some one particular place or country his residence, with no present purpose of changing it.

If it is usual with him, when out of employment, to ship in any vessel, the master of which will engage him, wholly indifferent as to the place or country to which she belongs, or as to the part of the world in which he may find himself when the contract is at an end, then it is inferable that no intention ex-

In the Matter of Thomas Bye, an Alien.

isted to acquire a new domicil, but to suffer that to continue which he had when he commenced his vocation as a mariner. Another circumstance, and generally a controlling one, is that he is a married man whose residence is naturally at the place and in the country where his wife and family dwell (Pothiers, Coutumes D'Orleans, c. I. sec. 20, 15). But this is not conclusive in all cases (*Forbes* v. *Forbes*, Kay, 341; Phillimore on Domicil, sec. 203; Story's Conflict of Laws, sec. 46), for it is not in the power of a man's wife or family to control his free right to fix his residence and place of permanent abode in any part of the world to which his interests or his inclination may lead him. It is the wife's duty to follow the fortunes of the husband; to go "whither he goeth" and abide in that place where it is most convenient for him to enjoy her society, and where he is able and willing to make provision for her support and that of his children.

The circumstances of the present case show that the applicant, Bye, is not to be classed with those mariners who are indifferent to the nationality of the vessel they engage in; to whom any ship is acceptable when the stipulated wages are paid, wherever she is found, whatever may be the flag she bears, or whither she may be going. On the contrary, he has limited himself, for the last fifteen years, in the pursuit of his calling, to the vessels of the United States. He has done so from interest and inclination; he has resided here for nine years in the youthful part of his life, and now, after the test of fifteen years of service in the merchant marine of this country, it is his fixed intention to continue here for the remainder of his life, an intention not simply gathered from his avowal now, but one repeatedly expressed heretofore to the owners of the vessel by whom he is at present employed, which he has also expressed to his wife and manifested by his efforts to induce her to come over to this country with the younger children and live with him here.

If, as is evidently the case, he finds it to be his interest to continue here in the employment in which he has been engaged for so many years, he should not be deprived of the benefits and advantages attendant upon a continuous residence in this

country, among which is the right of becoming a naturalized citizen, because his wife is unwilling to come here and take up her abode with him. In my judgment, he has been for the last fifteen years a resident of this country and for the last five a resident of this State, and is entitled to be naturalized (*Guier* v. *O'Daniel*, 1 Bin. R. 349; *Kotza's Case*, Sen. Doc. 1).