## UNITED STATES v. HABBICK.

(District Court, E. D. New York. March 9, 1923.)

1. **Aliens ⊜⇒62—Statute eliminating from residence time served on foreign vessel is not retroactive.**

   Act May 9, 1918, amending Act June 29, 1906, § 4 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4352), by adding a proviso that service by aliens on foreign vessels, whether continuous or broken, should not be considered as residence for naturalization purposes, contains nothing to show its provisions were intended to be retroactive, and does not apply to service on vessels of foreign registry, rendered before the passage of that act.

2. **Aliens ⊜⇒62—Time served for profit on foreign vessels cannot be counted as part of residence period.**

   The provision of Act May 9, 1918, amending Act June 29, 1906, § 4 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4352), to exclude from the period of residence for naturalization the time served on foreign vessels, was merely declaratory of the existing law, so that an alien who left this country to visit his former home, and there accepted employment for profit on a foreign vessel, in which employment he remained for two

years, and then enlisted in the British army, is not entitled to naturalization, even though his service on the foreign vessel was before the enactment of that statute.

**3. Aliens ☞62—More than mere intention to return is necessary to prevent interruption of residence period.**

When an alien leaves this country during the period of residence necessary for his naturalization, more than a mere intention on his part to return to this country is necessary to prevent the interruption of the period of residence.

In Equity. Suit by the United States against Andrew Armour Habbick to cancel a certificate of naturalization. Judgment rendered for plaintiff.

Ralph C. Greene, U. S. Atty. and Joseph M. Crooks, Asst. U. S. Atty., both of Brooklyn, N. Y.

Arthur A. Michell, of New York City, for respondent.

CAMPBELL, District Judge. This is an action in equity to set aside, cancel, and declare null and void a certificate of naturalization issued to the respondent out of this court on February 4, 1922. It is brought under the Act of June 29, 1906 (34 Stat. 596), on the theory that respondent had not resided continuously within the United States for a period of at least five years immediately preceding the date of his application for citizenship. There is no issue as to the facts, but simply an issue of law. The facts herein stipulated are as follows:

"It is hereby stipulated that Andrew Armour Habbick, the respondent herein, then a British subject, filed a petition for naturalization in this court under the terms of the Act of June 29, 1906, on September 24, 1921, and claimed therein continuous residence in the United States since July 15, 1914. That during the five years immediately preceding the date on which he filed his certificate of naturalization he was physically absent from the United States for a period of more than three years. That in March, 1915, respondent left the United States on the British steamship Tuscania for the purpose of visiting his father, who was in ill health and who died shortly after his arrival at his father's home in Scotland. That thereafter, when the respondent's former employers in Glasgow heard of his presence there, they advised him that he was within military age and advised him to join the British merchant marine, which he did. In June, 1917, it was believed by the British authorities that the respondent's services were more desirable as a soldier than as a merchant seaman, and he was consequently enlisted into the British army and served in France and Mesopotamia, returning to this country on September 26, 1919."

No question was raised, at the time of respondent's application for naturalization, as to the time served in the British army during the war, because, as appears herein, the only objection raised, at the time the order admitting the respondent to citizenship was granted, was that, under the provisions of the seventh subdivision of section 4 of the Act of June 29, 1906, as amended by the Act of Congress approved May 9, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4352), respondent could not secure residence for naturalization purposes during service upon vessels of foreign registry.

Said subdivision 7 of section 4 of the Act of June 29, 1906, was amended by the Act of May 9, 1918, by adding at the end thereof the following:

"Provided, further, that service by aliens upon vessels other than of American registry, whether continuous or broken, shall not be considered as residence for naturalization purposes within the jurisdiction of the United States, and such aliens cannot secure residence for naturalization purposes during service upon vessels of foreign registry."

The court, in admitting the respondent to citizenship, held that the provisions of the amendment of May 9, 1918, did not apply, because none of the service of the respondent upon vessels of foreign registry was subsequent to May 9, 1918, the date on which subdivision 7 of section 4 of the Act of Congress approved June 29, 1906, as amended, became effective.

[1, 2] I agree with the holding of the court in admitting the respondent to citizenship, in so far as it holds that the amending act of May 9, 1918, standing by itself, would be insufficient to bar the respondent from citizenship, inasmuch as the service on vessels of foreign registry was rendered some time before the passage of that act, and there is nothing in the wording of the act to show that its provisions were intended to be retroactive; but I do not believe that the substance of that amendment may be disregarded, because, as I read the law and the decisions, it appears to me that the said amendment was in reality simply declaratory of the law as it existed before the time of the passage of the amendment. Matter of Petition for Naturalization of Donald MacKinnon, 193 App. Div. 893, 183 N. Y. Supp. 108, in which the court held:

"A master of vessels sailing under foreign flags is to some extent acting under the laws of and subject to officials of a foreign country. Hence the five years' residence necessary for naturalization cannot be computed from sea service on foreign vessels, even if the applicant's wife and children reside in this country."

In the action at bar the question presented is: Has the respondent failed to comply with the conditions for admission to citizenship required by the laws of the United States at the time of his application therefor, in that he had not resided continuously in the United States of America for a term of five years at least immediately preceding the date of filing said petition? No point seems to have been made as to the time served by the respondent in the British army.

The respondent has not shown the continuous residence required under the law in force before such amendment became effective, because he cannot count the time he spent on vessels of foreign registry, in order to compute the five years he was required to reside in this country. Of course, absences short in duration, where there was definite intention of returning, would have been allowed, and respondent's absence as a seaman, while on a voyage, would not have debarred respondent, if he had shipped from this country and returned to his home in America at the end of the voyage; and this would have been true, although the voyage might, by reason of unforeseen accident, have been protracted beyond the anticipated time, or the respond-

ent have been compelled to return home in a roundabout way. But he must have returned home from time to time, in order to have continuously resided in this country. In re Schneider (C. C.) 164 Fed. 335; In re Cook (D. C.) 239 Fed. 782; In re An Alien, 1 Fed. Cas. 417, No. 201a.

The respondent did not go to sea from this country on a voyage as a seaman, but returned to his father's home in Scotland. Shortly after the respondent's arrival in Scotland, his father died, and, on the happening of that event, respondent did not return to this country, but, on the contrary, accepted employment from his former employers in Scotland, in the British merchant marine, and continued therein until June, 1917, when he enlisted in the British army.

[3] Certainly, during the time that he was serving in the British merchant marine, there is shown no act of his from which can be inferred an intention to return to this country, and much more than a mere intention to return is required. U. S. v. Mulvey, 232 Fed. 513, 146 C. C. A. 471. The service of the respondent upon British vessels was purely voluntary, for profit, and not in aid of this country, because we had not entered the war in 1915. Therefore respondent can gain no assistance from the cases which excuse involuntary absence. U. S. v. Cantini, 212 Fed. 925, 129 C. C. A. 445.

It is true that on the trial of this case I expressed the thought that the late great World War had created conditions which might change inferences which before the war had been judicially drawn from facts; but I did not intend thereby to suggest that service for profit on vessels of foreign registry, especially at a time when we were not engaged in war, should be considered in computing the time of residence in this country which would be required to obtain naturalization. The opinion I expressed had reference to the service of the respondent in the British army, during the time when this country and Great Britain as allies were unitedly engaged in a war for the preservation of civilization, and that time I then believed, and now believe, should be credited to the respondent in computing his term of residence, provided he had not, by his voluntary service in the British merchant marine, from 1915 to 1917, broken his term of residence in this country, which would be required in order for him to become a citizen.

I therefore believe that the respondent did not show what was required under the statute, viz. five years' continuous residence in this country, after filing his declaration of intention to become a citizen, and that the certificate of citizenship was improperly granted.

Judgment is therefore rendered in favor of the United States against the respondent as prayed for in the bill of complaint in the action at bar, but without costs.