## MACDONALD v. UNITED STATES.

Circuit Court of Appeals, First Circuit.
December 2, 1927.

No. 2143.

Aliens &#8658;62(3)—Alien employed by New Jersey corporation as master of steamships of British registry continuously since arrival held not entitled to citizenship (Comp. St. § 4352[7]; 8 USCA §§ 376, 382).

Alien employed continually since arrival in United States, by New Jersey corporation having general offices in Boston, as master of steamships, all of which were of British registry, where his voyages on such steamships commenced and ended at United States ports, and he had established residence in Massachusetts for five years preceding petition, *held* not entitled to citizenship under Act June 29, 1906, § 4, subd. 4 (8 USCA § 382), and subdivision 7, amended by Act May 9, 1918 (Comp. St. § 4352 [7]), in view of subdivision 8 (8 USCA § 376).

Anderson, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the District of Massachusetts; James Arnold Lowell, Judge.

Petition by Daniel Michael Macdonald against the United States for naturalization. From an order denying the petition, petitioner appeals. Affirmed.

William K. Jackson, of Boston, Mass. (Andrew W. Bennett, of Boston, Mass., on the brief), for appellant.

John W. Schenck, Asst. U. S. Atty., of Boston, Mass. (Frederick H. Tarr, U. S. Atty., of Gloucester, Mass., on the brief), for the United States.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. On December 22, 1926, Daniel Michael Macdonald filed in the District Court of the United States for the District of Massachusetts a petition for naturalization, in which he alleged that he came to the United States from Callao, Peru, on or about September 3, 1920, arriving at the port of New York September 17, 1920; that he had declared his intention to become a citizen of the United States on November 30, 1921; that he had resided continuously in the United States for the term of five years at least immediately preceding the date of his petition, and in the commonwealth of Massachusetts continuously for one year.

From the findings of fact reported it appears that the petitioner, since his arrival in the United States, has been continuously in the service of the United Fruit Company, a corporation organized under the laws of the state of New Jersey, having its general offices in the city of Boston, in the commonwealth of Massachusetts, as the master of several of its steamships, all of which were of British registry; that his voyages on all of such steamships commenced and ended at United States ports, principally at the port of Boston; that his wife joined him in the city of Boston September 1, 1921, and thereupon he established his residence in Somerville, Mass., and has since continuously maintained his residence in the vicinity of Boston with his wife and child.

His petition for naturalization was denied on the ground that he had served as master of vessels of foreign registry continuously since his entrance into the United States and therefore could not secure residence in the United States for naturalization purposes during the time of such service because of the provisions of subdivision 7 of section 4 of the Act of June 29, 1906, as amended by the Act of May 9, 1918, Comp. St. § 4352(7).

By the original act Congress defined in detail the requirements for naturalization, and in subdivision 4 of section 4 of the act provided as follows:

"4. It shall be made to appear to the satisfaction of the court admitting any alien to citizenship that immediately preceding the date of his application he has resided continuously within the United States, five years at least, and within the state or territory where such court is at the time held one year at least." 8 USCA § 382.

May 9, 1918, Congress added by amendment seven additional subdivisions of section 4, dealing in subdivision 7 with the naturalization of Filipinos, Porto Ricans not citizens of the United States, and any alien of the age of 21 years and upward who has enlisted or shall hereafter enlist in the armies of the United States, or in the United States Navy, or Marine Corps, or United States Coast Guard, or serve for three years on board of any vessel of the United States government, or for three years on board of merchant or fishing vessels of the United States of more than twenty tons burden, and provided that they might be admitted to citizenship without proof of the required five years' continuous residence in the United States, and further provided: "That service by aliens upon vessels other than of American registry, whether continuous or broken, shall not be considered as residence for naturalization purposes within the jurisdiction of the United States, and such aliens cannot secure residence for naturalization pur-

poses during service upon vessels of foreign registry." 8 USCA § 384.

It is claimed that this prohibition applies only to the aliens with which the amendment was dealing. The proviso is not limited by terms to such aliens, but is general. It is evident that Congress, in the passage of this amendment, intended to reward aliens who had enlisted in the Army and Navy of the United States and been honorably discharged, and also to encourage service upon merchant vessels or fishing vessels of the United States. That Congress had in mind the latter purpose is evidenced by the eighth subdivision, which is as follows:

"8. That every seaman, being an alien, shall, after his declaration of intention to become a citizen of the United States, and after he shall have served three years upon merchant or fishing vessels of the United States, * * * be deemed a citizen of the United States for the purpose of serving on board any such merchant or fishing vessel of the United States, anything to the contrary in any act of Congress notwithstanding; but such seaman shall, for all purposes of protection as an American citizen, be deemed such after the filing of his declaration of intention to become such citizen." 8 USCA § 376.

The chairman of the House Committee on Immigration and Naturalization, in the report made by him to the House of Representatives on May 3, 1918, in speaking of this seventh subdivision, said:

"The subdivision also prohibits the naturalization of aliens serving on vessels of foreign registry, this construction having been maintained by some courts in view of the provisions of section 2174, which recognizes service of aliens on vessels of American registry."

Subdivision 7 has been considered by two District Courts. In Re Nicolich, 17 F.(2d) 611, a case in the Eastern District of Louisiana, it was held that the proviso in subdivision 7 applied only to the classes of aliens enumerated in the amendment. This cannot be so, because one of these classes consists of aliens who have "served for three years on board of any vessel of the United States government, or for three years on board of merchant or fishing vessels of the United States," and does not include aliens who have served upon vessels of foreign registry. The proviso, by its terms, applies to aliens serving on vessels of foreign registry, and excludes such service from being considered as residence for naturalization purposes. It therefore has no application to aliens who have served upon vessels of American registry, and Congress must have

intended it to apply to the five years' continuous residence required by the act. In Petition of MacKinnon, 21 F.(2d) 445, the District Court of the Eastern District of New York had the same proviso under consideration and affirming its decision in United States v. Habbick, 287 F. 593, held that, although the petitioner had a wife and two children living in Brooklyn, where they had lived continuously for more than the five-year period, as the petitioner had been the master of vessels flying either the British or Canadian flag for at least four years of the five years immediately preceding the filing of his petition, his residence was not such as to entitle him to naturalization. The same petitioner had filed a prior petition in the Supreme Court of the state of New York, which was denied on the same ground, and upon an appeal being taken to the Appellate Division (193 App. Div. 893, 183 N. Y. S. 108) the order of the Supreme Court was unanimously affirmed, the court saying:

"A master of vessels sailing under foreign flags is to some extent acting under the laws of and subject to the officials of a foreign country. Hence, the five years' residence necessary for naturalization cannot be computed from sea service on foreign vessels, even if the applicant's wife and children reside in this country."

We think the interpretation placed upon subdivision 7 of section 4 by the New York court is correct.

The order of the District Court is affirmed.

ANDERSON, Circuit Judge (dissenting). Macdonald, born in Nova Scotia in 1877, has, since 1921, lived with his wife and child in Somerville, Mass., where his child is in the public school. In every aspect except one he is concededly entitled to citizenship. But he is a captain of a United Fruit steamship. This is a Boston enterprise which—for reasons unknown to me and probably immaterial if known—has its steamships under British registry. Macdonald's service—in and out of American ports but in a ship under British registry—is held to disentitle him to citizenship, although he has had his home in Massachusetts for more than five years. I cannot believe that Congress intended any such result to accrue from the proviso at the end of the long subdivision 7 of the Act of May 9, 1918, 40 Stat. 548. I construe that act as did Judge Burns in the Nicolich Case, 17 F.(2d). The act was in essence war legislation, worked out after we had been a year involved in the great World War. This subdivision gives Filipinos, Porto Ricans,

aliens enlisting in the Army, the Navy, the Marine Corps, the Coast Guard, or serving in our merchant marine (seven classes in all) a three-year probative term in these respective services, instead of "the required five-year residence within the United States."

After lengthy procedural provisions in this seventh subdivision, there is a caveat, near the end, reading: "Provided further that service of aliens upon vessels other than of American registry, whether continuous or broken, shall not be considered as residence for naturalization purposes within the jurisdiction of the United States, and such aliens cannot secure residence for naturalization purposes during service upon vessels of foreign registry." This proviso is held to bar the applicant. But the five-year period remains generally applicable. What was residence before is residence now. United States v. Habbick (D. C.) 287 F. 593.

To my mind, all that this proviso means is that the three-year provision shall not apply if the service be on vessels of foreign registry. Read in context, "during service upon vessels of foreign registry," obviously means "through such service upon vessels of foreign registry." The proviso has no bearing on rights under the five-year requirement. It simply limits the new grant, grounded on war service, to American registry. It offers a reward for three years of the designated dangerous war service; it does not penalize sea service under the flag of nations with which we were then in close association in the great war, by taking away naturalization rights accorded resident aliens for more than a century. Cf. Act April 14, 1802, 2 Stat. 153; Statutory History of Naturalization, Appendix B, in Report to the President by the Commission on Naturalization, 69th Congress, First Session, Doc. No. 46.

At one time the statute prohibited any absence from the United States, but this prohibition was repealed in 1848. 9 Stat. 240.

There is nothing new in recognizing war service and service in the merchant marine as a ground for shortening the probative period. See the Act of July 17, 1862, 12 Stat. p. 597; Act of June, 1872, 17 Stat. p. 268, now R. S. § 2174.

The eighth subdivision, quoted in the majority opinion, simply offers further reward and protection to alien declarants serving on vessels of the United States for three years; but I cannot see that it lends the slightest support to the theory of my brethren that the quoted proviso from the seventh subdivision is to be extended into a general taboo upon sea service under foreign registry.